Argued May 23, affirmed as modified August 20,
reconsideration denied September 25,
petition for review denied November 7, 1979

In the Matter of the Marriage of
HEADINGTON,
*Appellant, Cross-Respondent,*
*and*
HEADINGTON,
*Respondent, Cross-Appellant.*
(No. 33741, CA 13029)

599 P2d 1173

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant.

William G. Nokes, Corvallis, argued the cause and filed the brief for respondent-cross-appellant.

Before Schwab, Chief Judge, and Thornton, Buttler* and Joseph, Judges.

JOSEPH, J.

---

* Buttler, J., did not participate in this decision.

**JOSEPH, J.**

■ This is a dissolution of marriage case. The only issue is the division of property.[1]

Husband and wife met in 1967 when he was 41 and she was 24. Each had two children by prior marriages. The nature of their relationship between 1967 and 1973, when they married, is not very clear on the record. He claims that it was predominantly of a business nature. When they met, he was a merchant seaman and was away from his Seattle home eight to nine months each year. She was employed at a hotel in Portland. He expressed complaints about his difficulty in renting and protecting his house while he was away. According to him, she suggested that the solution to those problems was for her and her children to move into the house. He claimed that they reached an agreement under which she was to maintain the house, pay the bills and care for his children—of whom he expected to and did get custody once the arrangement was put into effect—and be available as a companion when he was in port. He was to send checks to her to cover the house and utility payments, living expenses for her and the children and an additional stipend for her.

Her description of the relationship was a bit different. She viewed it as the equivalent of a marriage, save for the fact they were not in fact married. There was much evidence that she held herself out as married to him. She often tried to convince him to wed, but he was exceedingly reluctant. He had substantial assets and was concerned that they eventually go to his children. He told her that if he were ever to marry again, he would have to have a pre-nuptial agreement

---

[1] The trial court awarded wife $250 a month as "limited temporary spousal support" until the judgment given as part of the property division is satisfied. Although husband claims that was error in his brief's summary of the arguments, he does not otherwise treat the issue. We will therefore not consider it. *See Patterson and Patterson*, 41 Or App 97, 599 P2d 1262 (1979).

[505]

to insure that. When they finally were about to marry, he had an attorney draw up such an agreement.

■ Wife claims that the agreement was not valid, but the trial court found that she knew the extent of his assets and understood the effect of the agreement. In fact, she asked that a portion be stricken before it was signed. There was no evidence of any duress or undue influence. She admitted that she signed the agreement because she badly wanted to get married. We agree with the trial court that the pre-nuptial agreement was valid.

The agreement provided in material part

"that all the properties of any name or nature, real, personal, or mixed, wherever they may be found, belonging to [husband] before the marriage, including but not limited to the property hereafter described, shall be and remain forever his personal estate, and that this shall include all interest, rents, and profits which may in time accrue, or result in any manner from increase in value, or be collected for the use of the same in any way. It is understood by both parties hereto that said property includes but is not limited to the following:

"1. [A specific parcel of real property in Coos County, together with the improvements thereon]

"2. [Specified securities]

"3. A bank account at the Corvallis Savings and Loan Association in the approximate amount of $11,500.00.

"4. A 1971 Chevrolet automobile and a 1966 Chevrolet pickup truck.

"5. All household furnishings except the bed in the master bedroom, the sofa and overstuffed chair, which items are the property of [wife].

"6. The Headington Sales Company and the SmokeGard Distributorship together with the stock on hand which the parties hereto mutually agree is worth approximately $6,000.00.

"7. The retirement benefits of [husband] owing from the Marine Engineers Beneficial Association."

[506]

A clause providing that property acquired after the marriage by husband was to be his separate property was stricken at wife's request. Husband concedes that under the agreement, property acquired jointly is to be divided equally.

Later on in 1973, after the marriage, husband used the $11,500 in the Corvallis account, along with some of the SmokeGard inventory, to make the down payment of approximately $12,000 on a farm in Corvallis. Title was taken in his name. The farm and the improvements on it (three houses and a trailer) are the primary assets of the parties. The property was purchased on a contract for $57,000, the monthly payments being $497. The balance owing on the principal is $28,000. The property is estimated now to be worth between $115,000 (his estimate) and $150,000 (her estimate). The trial court's comments indicate that he accepted the lower value, and we agree.

According to her, the monthly payments on the farm were made from a joint checking account into which her payroll checks—she began working outside the home in 1970—his payroll checks and the rental receipts on two of the houses and the trailer were deposited. According to him, "Every dollar into my property came from my assets before marriage." He claims that he and she talked about the property and agreed it was to be his for his children. A 1976 "financial plan" prepared for the parties by the company for which she works as a financial analyst listed the parties' assets and designated each "H", "W" or "J." It designated the real property as his. The record does not clearly disclose the amount received as rent, but for the short period about which we are informed the average monthly receipts were $385.

Each of the parties had bank accounts, retirement accounts, stocks and other property which they kept separate from the other's. They also accumulated a quantity of household goods. After they separated, the court issued an order granting him exclusive use of the

residence. One night he was arrested, and the police gave her his keys to the house. She and some friends went there and removed furnishings. According to husband, they took nearly everything in the house. She claims she does not have all the missing items, but she does not deny that her companions may have taken the rest.

The trial court awarded wife nearly everything that she took from the house, plus some additional items. That division gave her the lion's share of the household goods, but husband does not challenge that on appeal. Nor does he challenge the award to wife of her separate accounts and stocks. What he does challenge is the trial court's award to her of an additional $40,000 payable in six months (with an additional six months allowable at the court's discretion) and secured by a lien on the real property. The trial court explained that award as follows:

> "In determining the division of assets under the property, under the divorce, the Court does find and consider that under the prenuptial agreement the petitioner did agree to support the respondent from his assets acquired—owned prior to the marriage or that he earned after the marriage. The Court further finds that this would include support for her minor children that were in her custody at the time of the marriage.[2]
>
> "The respondent's earnings, when she was producing income during the marriage, did go into the joint account of the parties and was used and applied towards regular family expenses rather than being kept as her separate property and this—her income, since the marriage would be somewhere in the area of $20,000. The parties have lived together since 1967, and certainly the respondent has provided some assistance to the petitioner since the marriage in assisting him to increase his assets. And the Court, therefore feels that the respondent is entitled to a reasonable distribution of the assets of the parties

---

[2] We agree with husband that the record in no way supports this finding about her children.

keeping in mind the prenuptial agreement and the source of the assets of the parties at the present time.

"The petitioner is awarded the real property. The family home and the surrounding property that was principally an asset derived from money that he had prior to the marriage. But, I am, in making an award of the property to the respondent, which the court feels she is entitled to under the provisions of the Antenuptial Agreement and from her efforts extended to increase the value of the petitioner's property since the marriage the court is going to award the respondent a judgment against the petitioner in the sum of $40,000."

Wife is a financial analyst. She obtained her business education during the marriage. At some point she took over management of husband's financial matters. She testified that she saved him substantial amounts in taxes in two separate years. (They filed joint returns those years.) He claimed that her advice had led to two large losses on investments, and she did not dispute that. On that record, we cannot conclude that her financial management added anything to the value of his assets.

■■ Under the ante-nuptial agreement, husband is entitled to all property he held prior to the marriage, and any "interest, rents, and profits which may in time accrue, or result *in any manner* from increase in value, or be collected for the use of the same *in any way."* (Emphasis supplied.) That clearly includes any appreciation in value of the real property acquired by the investment of funds he held separately prior to the marriage. On the record we are unable to resolve the conflict in the evidence as to whether the monthly payments on the real property came out of a joint account or not, but even if they did that would not necessarily mean that one-half of the value attributable to those payments would belong to wife. If, for example, the rental payments on the other houses and the trailer equalled the monthly mortgage payment, husband might have been able to show that the joint account was used only as a convenience and that wife

[509]

was not intended to have any interest in the property. However, the testimony was that repairs on the rental property were approximately equal to rent received. It was also established that wife shared the work on the rental houses.

We can only conclude that the trial court must have found the wife more credible. We accept that, as well as the consequential finding that her "separate" assets were used in some measure to increase the value of his assets. However, even if the mortgage payments were made from the joint account and the parties intended to share jointly the equity created by those payments, the $40,000 award was clearly excessive. The maximum to which wife would be entitled on account of those payments is $25,500.[3] The decree is therefore modified to reduce the judgment in favor of wife from $40,000 to $25,500.

Affirmed as modified; costs to appellant.

---

[3] Our supporting calculation is this:

| | |
|---|---|
| 1. Real property contract price | $57,000 |
| 2. Husband's down payment | $12,000 |
| 3. Current value of property | $115,000 |
| 4. Unpaid principal | $28,000 |
| 5. Equity (3 minus 4) | $87,000 |
| 6. Amount of principal paid (1 minus 4) | $29,000 |
| 7. Ratio of equity to principal paid (5/6) | 3 |
| 8. Principal paid by husband (2 plus 6 minus 2/2)* | $20,500 |
| 9. Principal paid by wife (6 minus 2/2)* | $ 8,500 |
| 10. Equity attributable to wife (9 times 7) | $25,500 |

*This assumes that monthly payments from the joint account were 50/50, it ignores the first payment which husband probably paid.